**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JACK & OLIVIA KISNER** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil Action No. 1:05CV153LG-RHW** |
| | § | |
| **BUD'S MOBILE HOMES, ET AL.** | § | **DEFENDANTS** |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO STAY PROCEEDINGS
AND COMPEL ARBITRATION**

BEFORE THE COURT is the Motion to Stay Proceedings and Compel Arbitration filed

on August 11, 2005, by Champion Home Builders a/k/a Gateway Homes/Redman Homes and

Bud's Mobile Homes.  The Plaintiffs filed a response and a supplemental response and the

Defendants filed a collective rebuttal and a collective supplemental rebuttal.  After consideration

of the submissions, other pleadings on file, and the relevant legal authority, it is the opinion of

the Court that the Motion to Compel Arbitration should be granted as to Bud's Mobile Homes

and denied as to Champion Home Builders.

**FACTS AND PROCEDURAL HISTORY**

Gateway Homes and Redman Homes, a division of Champion Home Builders Company,

["Champion"] in Guin, Alabama, manufactured a mobile home and sold it to Bud's Mobile

Homes in Biloxi, Mississippi.  On June 23, 1994, that mobile home was sold to the Plaintiffs.  At

the time of purchase of the home in question, the Plaintiffs were provided with and signed a

Retail Installment Contract and Security Agreement.  The President of Bud's Mobile Homes also

signed the security agreement. *See Manufactured Home Retail Installment Contract and Security*

*Agreement att. as Ex. "A" to Motion to Compel Arbitration.*

Subsequent to discovering mold growth and infestation in their manufactured home, Plaintiffs filed a complaint in the Circuit Court of Jackson County, Mississippi, on August 31, 2004. In their complaint, Plaintiffs assert numerous allegations against the Defendants collectively. Plaintiffs contend that they are entitled to compensatory and punitive damages for: 1) breach of express warranty; 2) breach of implied warranty; 3) deceptive and misleading warranty; 4) bad faith; 5) negligent construction, inspection, repair and remediation; 6) breach of contract; 7) misrepresentation of material facts; 8) deceit; 9) suppression of material facts; 10) negligent failure to warn; and 11) violation of § 75-2-314, implied warranty of fitness for a particular purpose, all regarding the mobile home the Plaintiffs purchased on June 23, 1994. The Defendants removed the case to this Court on April 5, 2005. On August 11, 2005, Champion and Bud's Mobile Homes filed the instant motion seeking an order compelling arbitration based on ¶ 21 of the contract. The arbitration clause in the contract signed by the Plaintiffs provides that:

> [a]ll disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. § 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort and property disputes, will be subject to

binding arbitration in accord with this Contract.  The parties agree and understand that the arbitrator shall have all powers provided by law and the Contract.  These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. . . .

*¶ 21, Arbitration Provision, att. as Exhibit "A", to the Defendants' Motion to Compel Arbitration.*

During a status conference conducted on December 14, 2005, the parties requested and the Court agreed to withhold ruling on the arbitration issues until receipt of the decision of the Fifth Circuit Court of Appeals in *Southern Energy Homes v. Godwin*, 2006 WL 1582646 (5th Cir. May 31, 2006).  Subsequent to this decision, the parties supplemented their pleadings filed in connection with the instant motion.

## LAW AND ANALYSIS

### THE FEDERAL ARBITRATION ACT

Congress provided in the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ["FAA"], that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The effect of this section is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 4 of the FAA provides for entry of an order compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.  Under § 4, "if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties the court 'being satisfied that

the making of the agreement for arbitration or the failure to comply therewith is not in issue, 'shall direct the parties to arbitrate.'  If, on the other hand, 'the making of the arbitration agreement or the failure ... to perform the same be in issue, the court shall proceed summarily to the trial thereof.'"  *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. at 941 (quoting § 4).

The now familiar two-step inquiry applicable to motions to compel arbitration under § 4 requires that this Court first determine whether the parties agreed to arbitrate the dispute in question.  This involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Speetjens v. Larson,* 401 F.Supp.2d 600, 605 (S.D. Miss. 2005); *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257-58 (5th Cir. 1996).  "The second step is to determine 'whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims.'" *Webb,* 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)).

## I.    WHETHER PLAINTIFFS AND BUD'S MOBILE HOMES AGREED TO ARBITRATE?

## (1) Is there a Valid Arbitration Agreement between Plaintiffs and Bud's Mobile Homes?

In determining the validity of an arbitration agreement, the "parties' intentions control." *McKee v. Home Buyers Warranty Corp.*, 45 F.3d 981, 984 (5th Cir. 1995)(quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).  However, "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'"  *McKee,* 45 F.3d at 984, *quoting Volt Information Sciences, Inc. v. Stanford University*, 489 U.S. 468, 475-76, 109 S.Ct . 1248, 1254, 103 L.Ed.2d 488 (1989).  In

deciding whether the parties agreed to arbitration, courts utilize state-law contract principles that govern the formation of contracts. *Webb v. Investacorp Inc,* 89 F.3d 252 (5th Cir. 1996)(quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)); *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002).

The Plaintiffs argue that they did not knowingly and voluntarily waive their right to a trial by jury. Under Mississippi law a person is charged with knowing the contents of any documents that he executes. *United Credit Corp. v. Hubbard*, 905 So.2d 1176, 1178 (Miss. 2004); *J.R. Watkins Co. v. Runnels,* 252 Miss. 87, 96, 172 So.2d 567, 571 (1965)(holding that "[a] person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read.") The evidence in this case establishes that both Jack and Olivia Kisner signed a two-page security agreement containing an arbitration provision as part of the purchase contract with Bud's Mobile Homes on June 23, 1994. The following language is contained in ¶21, the arbitration provision: "the parties voluntarily and knowingly waive any right they have to a jury trial either pursuant to arbitration under this clause or pursuant to a court action by assignee as provided herein." *¶ 21, Ex. "A" to the Motion to Compel Arbitration*. This statement appears in capital letters and bold faced type such that it stands out from the remainder of the contract. Plaintiffs cannot now seek to avoid its terms. *See MS Credit Center, Inc. v. Horton,* 926 So.2d 167, 177 (Miss. 2006); *American General Financial Services, Inc. v. Griffin*, 327 F.Supp.2d 678 (N.D.Miss. 2004); *American Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 711 (5th Cir. 2002)(right to jury trial was expressly waived by signing arbitration agreement containing "clear and unmistakable capitalized and boldfaced words.").

**(2) Do Plaintiffs Claims' Against Bud's Mobile Homes Fall Within the Scope of the Arbitration Agreement?**

Next, the Court must determine whether the Plaintiffs' claims against Bud's Mobile Homes fall within the realm and scope of the arbitration agreement. The arbitration clause in the contract signed by the Plaintiffs provides in pertinent part that: "all disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration... ." *¶ 21, Exhibit "A" to the Motion to Compel Arbitration*. The Plaintiffs claims of breach of contract and of express and implied warranties; for misrepresentation and concealment; for bad faith; for suppression of material facts; for deceit; and for negligent failure to warn are claims and/or controversies that arose from and/or relate to the contract executed between Plaintiffs and Bud's Mobile Homes. The language contained in ¶ 21 of the agreement states in pertinent part that "all disputes arising from or relating to this contract . . . shall be resolved by binding arbitration. *Id*. "Such language has repeatedly been held broad enough to embrace all disputes between the parties having a significant relationship to the contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067-68 (5th Cir. 1998)("broad arbitration clauses are not limited to claims that literally arise under the contract, but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."); *Hornbeck Offshore Corp. v. Coastal Carriers Corp.,* 981 F.2d 752, 755 (5th Cir. 1993) ("arbitration clauses containing 'any dispute' language are of the broad type and absent allegations of fraud in the inducement, arbitration must proceed when an arbitration clause on its face appears broad

enough to encompass the party's claims.")  In the present case, it is clear that the Plaintiffs'

claims have a significant relationship to the execution of the contract for the sale of the mobile

home.  Accordingly, the Court is of the opinion that Plaintiffs' claims asserted against Bud's

Mobile Homes fall within the scope of the arbitration provision.  **II.    WHETHER LEGAL
CONSTRAINTS
EXTERNAL TO THE
AGREEMENT
FORECLOSE
ARBITRATION OF
PLAINTIFFS' CLAIMS
AGAINST BUD'S
MOBILE HOMES?**

The Plaintiffs argue that the arbitration provision, contained in the retail and installment

agreement was unilateral, unequitable and unconscionable and should therefore not be

enforced.  The Plaintiffs further submit that because they were consumers and not on equal

footing, Bud's, as the corporation, had a much greater bargaining position.  *Plaintiffs' Resp. to

Mot. to Compel Arbitration at p.8.*   In determining whether an agreement to arbitrate is

unenforceable due to unconscionability, the Court refers to state law. *Doctor's Assocs., Inc. v.

Casarotto,* 517 U.S. 681, 686-87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996); *Wash. Mut.

Fin. Group, LLC. Corp. v. Bailey,* 364 F.2d 260, 264 (5th Cir. 2004).  Under Mississippi law,

there are two types of unconscionability - procedural and substantive. *York v. Georgia-Pacific

Corp.,* 585 F.Supp. 1265, 1278 (N.D.Miss. 1984)).  Procedural unconscionability exists where

the plaintiff proves "'a lack of knowledge, lack of voluntariness, inconspicuous print, the use

of complex legalistic language, disparity in sophistication or bargaining power of the parties

and/or a lack of opportunity to study the contract and inquire about the contract terms.'"

*Shegog v. Union Planters Bank, Nat. Ass'n,* 332 F.Supp.2d. 945, 949 (S.D.Miss. 2004)(quoting

*First Family Financial Services, Inc. v. Sanford,* 203 F.Supp.2d 662, 666 (N.D.Miss. 2002),

*quoting York v. Georgia-Pacific Corp.,* 585 F.Supp. 1265, 1278 (N.D.Miss.1984)).  On the other

hand, a plaintiff "may prove substantive unconscionability by demonstrating that the terms of

the arbitration clause are oppressive." *First Family,* 203 F.Supp.2d at 666.  "That is, if the

arbitration agreement, as written, would necessarily operate in such a way as to have an

unconscionable effect, it is unconscionable." *Prigden v. Green Tree Financial Servicing Corp.,*

88 F.Supp.2d 655, 658 (S.D.Miss. 2000).

**(1) <u>Procedural Unconscionability</u>**

 While an agreement to arbitrate is not inherently unfair or unconscionable,  a "plaintiff

may prove procedural unconscionability if she proves 'a lack of knowledge, lack of

voluntariness, inconspicuous print, the use of complex legalistic language, disparity in

sophistication or bargaining power of the parties and/or a lack of opportunity to study the

contract and inquire about the contract terms.'" *Smith v. EquiFirst Corp.,* 117 F.Supp.2d 557,

564 (S.D.Miss. 2000)(quoting *Pridgen v. Green Tree Financial Servicing Corp.,* 88 F.Supp.2d

655, 658 (S.D.Miss. 2000)).  The Plaintiffs first take issue with the strength of their bargaining

position in comparison to that of Bud's and the fact that the loan agreement existing between

the parties was a form document, the terms of which were not negotiated.  However, other than

Plaintiffs' assertions, there is no evidence of disparity in sophistication and/or bargaining

power, and it is clear to the Court that the arbitration provision signed by the Plaintiffs was

easily readable and understandable.  *First Family Financial Servs., v. Fairley,* 173 F.Supp.2d

565, 570 (S.D.Miss. 2001)(contracting party has a legal duty to read a contract before signing

it); *MS Credit Center, Inc. v. Horton* 926 So.2d 167, 179 (Miss. 2006)("[o]ne party or the other

will always be more or less sophisticated in business matters than the other.")  Plaintiffs cannot

argue that the arbitration provision itself was in fine print, that they lacked the ability to read

the agreement, or that any behavior of the parties prevented them from reading and/or

comprehending the agreement to arbitrate.  *Fidelity Nat. Corp. v. Blakely* 305 F.Supp.2d 639,

643-44 (S.D.Miss. 2003); *see also Fleetwood Center., Inc. v. Gaskamp,* 280 F.3d 1069, 1077

(5th Cir. 2002).   The FAA prohibits states from passing statutes that require arbitration clauses

to be displayed with special prominence, *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-88

(1980), and Courts cannot use unconscionability doctrines to achieve the same result.  *Perry v.

Thomas*, 482 U.S. 483 at 492 n. 9 (1987); *see also Iberia Credit Bureau, Inc. v. Cingular

Wireless LLC, et al.*, 379 F.3d 159, 172 (5th Cir. 2004)(type-size argument rejected as basis for

invalidating arbitration clauses.)

        In the present case, although the arbitration clause at issue was pre-printed on the loan

documents and contained on the second page, said provision is nevertheless entirely readable.

Where "both the note and security agreement recite, in regular-sized font, that both parties

waived their rights to a jury trial 'in any action, proceeding, or counterclaim brought by any

party' against the other, . . . formal legal training is not needed to understand the import of

these statements." *Shegog v. Union Planters Bank, Nat. Ass'n,* 2004 WL 1897534, *3

(S.D.Miss. 2004).  Moreover, Plaintiffs have not alleged illiteracy or the inability to understand

the concepts contained within the security agreement and were otherwise fully capable of

reading the entire contract.  *See Shelley v. Coldwell Banker Real Estate Corp.*, 2006 WL

1313825, *3 (N.D.Miss. 2006).  Based on the record before this Court, the Plaintiffs have

failed to establish that the agreement is procedurally unconscionable.  *American General*

*Financial Services, Inc. v. Griffin,* 327 F.Supp.2d 678 (N.D.Miss. 2004).

**(2) <u>Substantive Unconscionability</u>**

The Plaintiffs may prove substantive unconscionability if they can establish that the terms of the arbitration clause were oppressive. *York v. Georgia-Pacific,* 585 F.Supp. 1265, 1278 (N.D. Miss. 1984). The test is "whether, in light of the commercial background and commercial needs of the particular trade or case, the clause is so one-sided that it is unconscionable under the circumstances existing at the time the contract was made." *Id.* at 1279. The party resisting arbitration has the burden of demonstrating why arbitration is not appropriate. *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 81, 121 S.Ct. 513, 517, 148 L.Ed.2d 373 (2000). This the Plaintiffs have failed to do. Their unsubstantiated conclusions are insufficient to render the arbitration agreement unenforceable. *American General Financial Services, Inc. v. Griffin*, 327 F.Supp.2d 678 (N.D.Miss. 2004). Based on the record and evidence before the Court, there are no external legal constraints that should invalidate the agreement to arbitrate between Plaintiffs and Bud's Mobile Homes.

III.    IS THERE A VALID AGREEMENT TO ARBITRATE BETWEEN PLAINTIFFS AND CHAMPION?

The Plaintiffs contend that under ordinary contract principles, Champion, as the manufacturer of the home, was not a party to the retail sales contract. Plaintiffs oppose the attempt to compel arbitration on the grounds that the security agreement they signed with Bud's Mobile Homes does not contain an enforceable arbitration agreement with Champion. Plaintiffs submit that because the contract was not signed by Champion, there was no

consideration, no offer and acceptance, and/or meeting of the minds, the provision should not be enforced as to Champion. *Plaintiffs' Memorandum Response in Opposition to the Motion to Compel Arbitration, ¶ 2 at p. 2.* In the present case, the only document before the Court that contains an arbitration provision is the security agreement signed by the Plaintiffs and the President of Bud's Mobile Homes. The record reveals that there is not a separate document or warranty evidencing the existence of an arbitration agreement between Champion and the Plaintiffs. Under principles of Mississippi contract law, Plaintiffs should not be obligated to arbitrate their claims against Champion. *See McCreary v. Liberty Nat. Life,* 6 F.Supp.2d 920, 921 (N.D.Miss. 1998)(arbitration endorsement not enforceable where there is "no notice, no discussion, and no negotiation.")

EQUITABLE ESTOPPEL

Defendants argue that because Plaintiffs' claims against them are inextricably intertwined with the claims asserted against Bud's Mobile Homes an order compelling arbitration on grounds of equitable estoppel is warranted. Defendants submit that because Plaintiffs are attempting to sue to enforce certain provisions based on the agreement with Bud's Mobile Homes, the principles of equitable estoppel apply to prevent them from relying on some but not all aspects of the agreement. *Defendants' Supplemental Brief in Support of its Motion to Compel Arbitration, at p. 8.*

The Fifth Circuit has held that equitable estoppel may apply in two circumstances to allow a non-party, or non-signatory, to enforce an arbitration agreement. *Ford Motor Co. v. Ables,* 2006 WL 3431602 *5(5th Cir. 2000) *analyzing Grigson v. Creative Artists Agency*, 210 F.3d 524, 527 (5th Cir. 2000). The first such circumstance is when "the signatory to a written

agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Grigson,* 210 F.3d at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).  The second is where "the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.*  Neither of these circumstances exists in this case.  Plaintiffs' claims against Bud's Mobile Homes are for violation of certain provisions of the contract, conspiracy and various forms of fraud.  The allegations asserted against Bud's Mobile Homes are distinguishable from those brought against Champion, as the manufacturer of the mobile home.   While Plaintiffs have alleged concerted misconduct by both Champion, the nonsignatory, and Bud's Mobile Homes, the signatory, Plaintiffs' warranty and habitability claims asserted against Champion are not so "substantially interdependent" as to invoke equitable estoppel.  *Ford Motor Co. v. Ables,* 2006 WL 3431602, *5 (5th Cir. 2006).   Moreover, other than the allegations contained in the complaint against the collective Defendants, nothing in the record indicates or establishes that the Plaintiffs accepted benefits under a manufacturers warranty issued by Champion or Gateway/Redman Homes.  Plaintiffs have sued Champion on numerous theories, both in tort and in contract.   These allegations include an express warranty claim.   Based on the record before the Court, Plaintiffs cannot be compelled to arbitrate their claims against Champion as the only arbitration provision present in the evidentiary materials before this Court is the retail installment contract executed by the Plaintiffs and Bud's.  *See Southern Energy Homes, Inc. v. Kennedy,* 774 So.2d 540, 544-45 (Ala. 2000)(arbitration agreement is specifically applicable to the parties who executed it, . . ..  language of arbitration agreement executed between the

purchasers and the seller does not reach the manufacturer; therefore, manufacturer is not bound by terms of the arbitration agreement. *First American Title Ins. Corp. v. Silvernell,* 744 So.2d 883 (Ala. 1999)); *accord Adkins v. Palm Harbor Homes, Inc*., 157 F.Supp.2d 1256 (M.D.Ala. 2001)("arbitration agreement between seller and buyer of mobile home, which by its terms inured to benefit of manufacturer, did not compel buyer to arbitrate claim that manufacturer breached express warranty in violation Magnuson-Moss Act, when warranty made no reference to arbitration limitation on enforcement options."); *but see Walton v. Rose Mobile Homes LLC,* 298 F.3d 470, 478 (5th Cir. 2002)(Fifth Circuit, in a divided panel decision, reversed district court's order denying manufacturer's motion to compel arbitration holding that the Magnuson-Moss Warranty Act permits binding arbitration between purchaser and non-signatory where written arbitration provision is contained in manufacturer's warranty); *accord Southern Energy Homes, Inc. v. Ard,* 772 So.2d 1131, 1134-35 (Ala. 2000)(arbitration provision enforced where manufacturers's express warranty is present in the record.)  Based on the present record, the Court is of the opinion that application of equitable estoppel is not warranted to compel arbitration of Plaintiffs' claims against Champion.

## <u>CONCLUSION</u>

Plaintiffs' claims against Champion are not subject to the arbitration clause.  Plaintiff's claims against Bud's Mobile Homes are subject to the arbitration clause in the contract.  Thus, the arbitrable claims should be stayed pending arbitration.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that the Defendants' Motion to Stay Proceedings and Compel Arbitration [13-1] should be and is hereby **GRANTED IN PART.**  In accordance with the Court's findings, the claims asserted by the Plaintiffs against

Bud's Mobile Homes are hereby stayed pending arbitration.

**IT IS FURTHER ORDERED AND ADJUDGED** that the remainder of the

Defendants' Motion is **DENIED.**

**SO ORDERED AND ADJUDGED** this the 3th day of March, 2007.


s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE